## UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ARMANDO DIAZ, | ) | Case No. 08-41849-jwv7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____) | | |
| | ) | |
| NANCY J. GARGULA, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No  09-4018-jwv |
| | ) | |
| ARMANDO DIAZ, | ) | |
| | ) | |
| Defendant. | ) | |

### FIRST AMENDED COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO 11 U.S.C. § 727

Plaintiff Nancy J. Gargula, United States Trustee for the Western District of Missouri

("**Plaintiff**" or "**United States Trustee**"), by and through counsel, states and alleges upon

information and belief the following:

### Jurisdiction and Venue

1.      This is an adversary proceeding in which Plaintiff is objecting to the discharge of

Armando Diaz ("Debtor" or "Defendant") in case number 08-41849, now pending in the

United States Bankruptcy Court for the Western District of Missouri, Western Division.

The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C.  § 1334(b)

and 11 U.S.C. § 727(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

1

Venue is proper pursuant to 28 U.S.C. § 1409(a).

2.      This Complaint is timely filed pursuant to Bankruptcy Rule 4004.

### Parties

3.      Plaintiff is the duly appointed United States Trustee for Region 13, which includes the
Western District of Missouri, pursuant to 28 U.S.C. § 586(a).   Plaintiff has standing and
files this complaint in her official capacity pursuant to 11 U.S.C. §§ 307 & 727(c)(1).

4.      The Defendant is the Debtor in Case No. 08-41849 under Chapter 7 of the Bankruptcy
Code pending in this Court ("the Bankruptcy Case").

5.      Robert A. Pummill is the duly appointed successor Chapter 7 trustee ("Trustee") in the
Bankruptcy Case.

### Procedural History

6.      The Defendant filed this Chapter 7 petition on May 12, 2008.

7.      Together with his Chapter 7 petition, the Defendant filed his bankruptcy schedules, a
statement of financial affairs ("SOFA"), an Official Form 22A ("Means Test Form"),
together with other documents, which are dated May 9, 2008.  Certain amended
schedules were filed on July 11, 2008.

8.      The Defendants' schedules, SOFA and Means Test Form were executed by the
Defendant under penalty of perjury.

8.      The Defendant testified after being placed under oath at his § 341 meeting of the
creditors.

**Factual Allegations[1]**

9.      At the time of the commencement of this case, the Defendant was the President and

principal shareholder of, and exercised substantial control of a number of corporations,

including but not limited to Diaz Construction Company, Inc., Diaz Construction

Company Midwest, Inc., The Diaz Group, Inc., Diaz Construction Enterprise, LLC, Diaz

Construction Holdings, Inc., Aztec Properties, Inc., Aztek Speciality Products, Inc. and

Innovative Builders, Inc. (together referred to as "the Diaz corporations").

10.     The Diaz corporations were primarily engaged in the business of commercial

construction services, including consulting and masonry contracting.

11.     The Diaz corporations operated both union and non-union jobs depending on the

particular corporate entity bidding the construction job.  For example, Diaz Construction

Company Midwest bid non-union projects, but Diaz Construction Company was a union

contractor.

12.     At all relevant times, the Defendant was married to Jennifer Lynn Diaz ("JLD").

13.     On or about September 18, 2006, JLD incorporated DCM Masonry Company, LLC

("DCM").

14.     At all times relevant to this complaint, JLD was the President and majority shareholder of

DCM.

15.     Both the Defendant and JLD have represented to third parties that the Defendant is an

authorized representative of DCM, and that he is authorized to act and do business on

---

[1] These allegations form a factual basis for the UST's complaint under § 727 of the
Bankruptcy Code.  However, the UST reserves the right to present additional facts at trial in
support of her complaint, recognizing that Federal Courts require only notice pleading.

behalf of DCM, and the Defendant has represented to third parties that he is employed by DCM.

16.     The Defendant has acted as the project manager for DCM on a significant number of construction projects since the formation of DCM in 2006.

17.     At the time of the formation of DCM in 2006, DCM shared common employees with the Diaz corporations.

18.     The Defendant instructed his employees at the Diaz corporations to perform work for the Diaz corporations between the hours of 8 a.m. and 5 p.m. on work days, and to perform work for DCM after 5 p.m.

19.     The Defendant represented to third parties that he had the authority to hire and fire DCM employees, and made offers of employment based on his assertion of such authority.

20.     JLD was responsible for the financial and paperwork tasks at DCM, while the Defendant was responsible for operational tasks.

21.     JLD lacked the experience and skills to successfully manage the operational tasks of construction projections on which DCM worked without the assistance of the Defendant.

22.     Despite the Defendant's significant involvement with DCM, the Defendant represented on his Schedule I that he was unemployed and had no affiliation with DCM.

23.     The Defendant and JLD have a joint bank account at UMB Bank.

24.     JLD owns a bank account at Bank of America.

25.     DCM had bank accounts at Security Bank of Kansas City, Kansas, and currently has bank accounts at Pony Express Bank in Liberty.

26.     In the two year period prior to the commencement of this case, at least $94,724.49 was

4

transferred through a number of transactions from the Defendant's joint checking account at UMB to accounts owned by DCM.

27.    None of these transfers were disclosed by the Defendant, as required by Question #10 on his SOFA.

28.    Between January 1, 2008 and the date of the commencement of the Bankruptcy Case, at least $27,662.48 was subsequently transferred from the accounts of DCM to JLD's separate account at Bank of America.

29.    Between the date of the commencement of the Bankruptcy Case and December 31, 2008, at least $46,690.60 was subsequently transferred from the accounts of DCM to JLD's separate account at Bank of America.

30.    On or about May 14, 2008, two days after the commencement of the Bankruptcy Case, the Defendant withdrew the sum of $80,000.00 from his Individual Retirement Account number xxx-xx8972 and deposited the funds in his joint UMB account

31.    On or about May 15, 2008, three days after  the commencement of the Bankruptcy case, the Defendant executed a loan agreement with DCM for the principal amount of $80,000.00 ("DCM Loan 1").  The note provided for a repayment term of 15 years, with 10% annual interest, and a 3% "closing fee" to be retained by the Defendant from the loan proceeds (amounting to $2,400).

32.    On or about May 16, 2008, the sum of $77,600.00 was transferred from the Defendant's joint bank account at UMB to accounts controlled by DCM.

33.    On or about June 1, 2008,the Defendant executed a loan agreement with DCM for the principal amount of $80,000.00 ("DCM Loan 2").  The note provided for a repayment

term of 15 years, with 10% annual interest, and a 5% "closing fee" to be retained by the

Defendant from the loan proceeds (amounting to $4,000).

34.     On or about June 12, 2008, less than one month after the commencement of this case, the

Defendant withdrew the sum of $80,000.00 from his Individual Retirement Account

number xxx-xx8972 and deposited the funds in his joint UMB account in order to

execute DCM Loan 2.

35.     On or about June 13, 2008, the sum of $76,000.00 was transferred from the Defendant's

joint account at UMB to accounts owned by DCM.

36.     On or about August 1, 2008, the Defendant withdrew the sum of $31,750.43 from his

Individual Retirement Account number xxx-xx8972 and deposited the funds in his joint

UMB account.

37.     On or about August 27, 2008, the Defendant executed a loan agreement with DCM for

the principal amount of $27,000.00 ("DCM Loan 3").  The note provided for a repayment

term of 15 years, with 10% annual interest, and a $2,000 "flat closing fee" to be retained

by the Defendant from the loan proceeds.

38.     On or about August 28, 2008, the sum of $25,000.00 was transferred from the

Defendant's joint account at UMB to accounts owned by DCM.

39.     In the three months following the commencement of the Bankruptcy Case, the Defendant

withdrew $191,750.43 from his IRA, and purported to loan $178,600 of that sum to

DCM, an entity allegedly principally owned and controlled by JLD, his spouse and an

insider.

40.     The Defendant executed under penalty of perjury a Schedule I and Means Test Form.

6

41.     The Defendant's Means Test Form declared that the only income received by the Defendant and JLD in the six months prior to the commencement of this case was income received by JLD from employment with a third party.[2]  As a result, the Defendant declared that his household income was below the median income for a household size of three in Missouri.

42.     In truth in fact, as the Defendant then knew, the Defendant and JLD were operating DCM as an ongoing concern, and that in the six month period prior to the commencement of the Bankruptcy Case, the Defendant's household had received more than $27,000.00 in payments from DCM.[3]

43.     Further, the Defendant filed a sworn Schedule I, which requires the Defendant to declare his reasonably anticipated future income, as well as the reasonably anticipate future income of JLD.

44.     The Defendant declared on his Schedule I that the sole source of income reasonably anticipated to be received by his household was the employment income received by JLD from her third-party employment, and that the Defendant was "unemployed".

45.     In truth in fact, as the Defendant then knew, the Defendant and JLD were operating DCM as an ongoing concern and the Defendant and JLD were deriving income from or receiving substantial payments from DCM.

46.     The Defendant received a direct payment of $3,087.89 from DCM on May 20, 2008, six

---

[2] The UST does not believe it appropriate to refer to JLD's employer by name in this pleading.

[3] While some of these amounts appear to represent reimbursements, a significant amount is likely income based on a review of DCM's books, and the type and size of the payments.

7

days after the commencement of the Bankruptcy Case.

47.    JLD testified this payment was in the form of compensation for services rendered by the

Defendant on behalf of DCM.

48.    Further, the Defendant then knew that he intended to liquidate his IRA and loan the

proceeds to DCM, which would generate interest income on his behalf which was

required to be reported on Schedule I.

49.    The Defendant failed to report any income derived from or payments from DCM,

transfers to DCM or his substantial activities on behalf of DCM in his bankruptcy

schedules or in his sworn testimony until confronted with direct evidence, in order to

conceal his substantial "silent" equity and creditor interest in DCM, some or all of which

is property of his bankruptcy estate.

50.    On or about April 20, 2007, the Defendant withdrew the sum of $30,000.00 in cash from

his joint UMB bank account.

51.    On or about August 1, 2007, the Defendant withdrew the sum of $16,500.00 in cash from

his joint UMB bank account.

52.    The Defendant converted the $16,500 to a tellers check drawn on UMB Bank and made

payable to JLD.

53.    On or about August 2, 2007, JLD deposited the tellers check for $16,500 in her separate

account at Bank of America.

54.    The Defendant failed to disclose these withdrawals and potential transfers on his SOFA.

55.    The Defendant has failed to satisfactorily explain the disposition of these funds.

56.    The Defendant's Schedule E lists $293,049.64 in required employee benefit plan

8

contributions (the "plan contributions") that the Defendant failed to make.

57.     That the Defendant and certain Diaz corporations acted as a fiduciary with respect to the

plan contributions.

58.     That the Defendant has failed to satisfactorily account for the disposition of these funds

and explain why there is a deficiency of assets to meet his liabilities with regard to the

plan contributions.

59.     On or about September 27, 2007, the Defendant and JLD sold a home located at 9024 N.

Walrond Avenue, Kansas City, Clay County, Missouri for $270,000.00.

60.     As part of the sale, the Defendant and JLD received a promissory note and second deed

of trust on the real property for the amount of $27,000.00, the deed of trust being

recorded at page 43 of book 5823 of the Clay County Recorder of Deeds on October 2,

2007.

61.     As part of the sale, the Defendant and JLD received at closing cash proceeds of

$41,168.73.

62.     The Defendant knowingly failed to disclose the sale on his statement of financial affairs.

63.     The Defendant knowingly failed to disclose the promissory noted and deed of trust on

Schedule B.

64.     The Defendant has failed to satisfactorily account for the cash proceeds received at the

sale.

65.     On or about August 23, 2007 the Defendant incorporated a new entity with the Missouri

Secretary of State called Diaz Construction Co LLC.

66.     Upon information and belief, the Defendant was the sole member of Diaz Construction

Co LLC.

67.    The Defendant failed to disclose the existence of Diaz Construction Co LLC in his

bankruptcy petition, schedules or statement of financial affairs.

68.    On or about September 4, 2007, the Defendant opened an account at M&I Bank and

Trust in the name of Diaz Construction Co LLC (the "M&I account").

69.    The Defendant was the sole signatory on the M&I account.

70.    Diaz Construction Co LLC had no other assets other than the M&I account and did not

do any business.

71.    The sole purpose of the creation of Diaz Construction Co LLC was to open the M&I

account, which in turn was used by the Defendant for the purpose of converting funds

belonging to Diaz Construction Co., Inc. and Diaz Construction Midwest, Inc. (and

consequently the creditors of those entities) into funds for the personal use of the

Defendant and JLD.

72.    Between September 5, 2007 and September 12, 2007, the Defendant deposited a total of

$10,176.48 in items made payable to Diaz Construction Co and Diaz Construction Co.,

Inc.  into the M&I account.

73.    Several of the checks made payable to Diaz Construction Co. and deposited into the M&I

accounts were issued prior to the creation of Diaz Construction Co LLC and therefore

could not have been issued to Diaz Construction Co LLC.

74.    Between September 11, 2007 and September 24, 2007, the Defendant issued three checks

totaling $7,124.84 to JLD from the M&I account.

75.    JLD deposited the three Diaz Construction Co LLC checks from the M&I account into

10

her separate personal account at Bank of America.

76.     On or about September 9, 2007, the Defendant wrote a check to his ex-wife Dawn Diaz
        from the M&I account in the amount of $3,000.

77.     On or about December 18, 2007, the Defendant deposited three checks drawn on the
        United States Treasury and made payable to Diaz Construction Inc. And Diaz
        Construction Company, Midwest, Inc., totaling $35,693.17 into the Diaz Construction Co
        LLC account at M&I Bank.

78.     On or about December 21, 2007, the Defendant issued a check totaling $35,000 to
        himself from the Diaz Construction Co LLC account at M&I Bank.

79.     On the face of the December 21, 2007, check the Defendant wrote "Year End Bonus".

80.     On or about December 22, 2007, the Defendant deposited the $35,000 check into his joint
        checking account at UMB Bank.

81.     According to the UMB bank statements, the Defendant and JLD used a substantial
        portion of the $35,000 to pay ordinary living expenses from the UMB account.

82.     The $35,000 check constituted income within the six month period prior to the
        commencement of his bankruptcy case.

83.     Thee Defendant failed to disclose the $35,000 worth of income in his statement of
        financial affairs or on his Means Test Form (Form 22A).

84.     At the time the Defendant opened the M&I account in the name of Diaz Construction Co
        LLC, the Defendant was aware that the Diaz corporations owed substantial amounts of
        money to creditors, were being sued by creditors, and that creditors were actively
        pursuing the assets of the Diaz corporations.

11

85.    The Defendant's schedules and statements filed in this case admit that the Defendant was

        personally liable on a substantial portion of those debts owed by the Diaz corporations.

86.    The Defendant incorporated Diaz Construction Co LLC and opened the M&I account in

        the Diaz Construction Co LLC with the intent to hinder, delay or defraud his creditors by

        converting accounts receivable due to the Diaz corporation into a new entity and then

        converting the assets of the entity for his personal use.

87.    On the date of the Defendant's bankruptcy petition, the balance in the Diaz Construction

        Co LLC account at M&I Bank was $935.79

88.    On the date of the Defendant's bankruptcy petition, Diaz Construction Co LLC had not

        done business and had no individual creditors.

89.    The value of Diaz Construction Co LLC on the date of the commencement of the

        Defendant's bankruptcy case was at least $935.79.

90.    As the 100% owner of Diaz Construction Co LLC, the Defendant's interest in Diaz

        Construction Co LLC was worth at least $935.79 on the date of the filing of the

        Defendant's bankruptcy case.

91.    The Defendant knowingly concealed the assets of Diaz Construction Co LLC and failed

        to disclose the M&I Bank account to the Chapter 7 Trustee and to the Plaintiff, despite

        numerous requests by the Chapter 7 Trustee and the Plaintiff throughout the Defendant's

        bankruptcy case that he provide documents related to any bank accounts held in any

        name to which the Defendant was a signatory or held any ownership interest.

## **Count I**

92.    Paragraphs 1-91 of this complaint are incorporated by reference.

93.     The Defendant did, with the intent to hinder, delay or defraud a creditor or officer of

estate charged with custody or control of estate property under Title 11 of the United

States Code, transfer or permitted to be transferred his property, within one year prior to

the commencement of the Bankruptcy Case.

WHEREFORE, Plaintiff requests the Court's order and judgment denying the discharge of

Defendant under 11 U.S.C. § 727(a)(2)(A) for transferring or permitting to be transferred his

property within the one year period prior to the commencement of this case with the intent to

hinder, delay or defraud his creditors and Bankruptcy Trustee, and for such further relief as may

be just and proper.

### Count II

94.     Paragraphs 1-93 of this complaint  are hereby incorporated by reference.

95.     The Defendant did, with the intent to hinder, delay or defraud a creditor or officer of

estate charged with custody or control of estate property under Title 11 of the United

States Code, concealed or permitted to be concealed his property, within one year prior to

the commencement of the Bankruptcy Case.

WHEREFORE, Plaintiff requests the Court's order and judgment denying the discharge of

Defendant under 11 U.S.C. § 727(a)(2)(A) for concealing or permitting to be concealed his

property within the one year period prior to the commencement of this case with the intent to

hinder, delay or defraud his creditors and Bankruptcy Trustee, and for such further relief as may

be just and proper.

### Count III

13

96.     Paragraphs 1-95 of this complaint are hereby incorporated by reference.

97.     The Defendant did, with the intent to hinder, delay or defraud a creditor or officer of

estate charged with custody or control of estate property under Title 11 of the United

States Code, concealed or permitted to be concealed property of his bankruptcy estate,

after the date of the filing of the petition commencing the Bankruptcy Case.

WHEREFORE, Plaintiff requests the Court's order and judgment denying the discharge of

Defendant under 11 U.S.C. § 727(a)(2)(B) for concealing or permitting to be concealed property

of the estate after the filing of the petition commencing this case with the intent to hinder, delay

or defraud his creditors and Bankruptcy Trustee, and for such further relief as may be just and

proper.

### Count IV

98.     Paragraphs 1-97 of this complaint are hereby incorporated by reference.

99.     The Defendant knowingly and fraudulently, in or in connection with the Bankruptcy

Case, made a false oath or account by executing schedules under penalty of perjury

which he knew were not accurate, complete and correct, and by testifying falsely while

under oath at his meeting of creditors.

100.    As provided in 28 U.S.C. § 1746, the Defendant's certifications on his schedules, SOFA

and Means Test Form had like force and effect as an oath

WHEREFORE, Plaintiff requests the Court's order and judgment denying the discharge of

Defendant under 11 U.S.C. § 727(a)(4)(A) for knowingly and fraudulently making a false oath in

connection with his Bankruptcy case, and for such further relief as may be just and proper.

### Count V

14

101.    Paragraphs 1-100 of this complaint are hereby incorporated by reference.

102.    The Defendant has failed to satisfactorily explain a loss of assets or deficiency of assets
to meet his liabilities.

WHEREFORE, Plaintiff requests the Court's order and judgment denying the discharge of

Defendant under 11 U.S.C. § 727(a)(5) for failing to satisfactorily explain a loss of assets or

deficiency of assets to meet his liabilities and for such further relief as may be just and proper.


Respectfully submitted,

NANCY J. GARGULA
UNITED STATES TRUSTEE


By: */s/ Adam E. Miller*
    Adam E. Miller,  Okla. Bar #21301
    Trial Attorney
    Office of the U.S. Trustee
    400 East 9th St., Ste 3440
    Kansas City, MO 64106
    Telephone:  (816) 512-1940
    Telecopier: (816) 512-1967
    Email: adam.e.miller@usdoj.gov